UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DO SUNG UHM AND EUN SOOK UHM, a married couple, individually, and for all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HUMANA, INC., a Delaware corporation, HUMANA MEDICAL PLAN, INC., a Florida corporation, HUMANA HEALTH PLAN, INC., a Kentucky corporation, all d/b/a Humana,<br><br>Defendants. | CASE NO. C06-0185-RSM<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM |

This matter comes before the Court on defendant Humana Health Plan, Inc.'s Motion to Dismiss for Failure to State a Claim. (Dkt. # 9-1). Remaining defendant Humana, Inc. has joined in the motion to dismiss.[1] (Dkt. #24). Oral argument was held on May 26, 2006, and the matter has been fully considered. For the reasons set forth below, defendants' motion shall be

---

[1] On April 18, 2006, plaintiffs filed an objection to Humana, Inc.'s joinder in Humana Health Plan's motion to dismiss. (Dkt. #25). However, the same legal arguments apply to Humana, Inc. and Humana Health Plan, Inc. in this case, and the Court finds that Humana Inc.'s joinder in the motion to dismiss is proper.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
PAGE - 1

granted.

In this action, plaintiff brought various state-law claims against defendants, who are sponsors of a Medicare Part D ("Part D" or "Drug Benefit") prescription drug plan ("PDP"). Defendants argue that the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 ("MMA") (Pub. L. No. 108-173, 117 Stat. 2066 (codified in scattered sections of 42 U.S.C)), expressly preempts state law with respect to any aspect of the Drug Benefit for which there are federal standards. Defendants assert that plaintiffs' claims are preempted by federal law because there are federal standards which govern the subject matter of each of plaintiffs' claims. Defendants further argue that plaintiffs may not seek judicial review of their claims until they have exhausted the MMA-established administrative remedies for coverage determinations and other grievances.

Plaintiffs respond that Congress did not intend for the MMA's express preemption language to preempt state tort and contract claims. Plaintiffs further argue that their claims do not "arise under" the Medicare Act, and that the claims are not preempted, according to the rule set out in *Heckler v. Ringer*, 466 U.S. 602, 615 (1984). Plaintiffs also argue that the doctrine of exhaustion of administrative remedies is not applicable to plaintiffs because they do not seek a coverage determination and because the grievance procedure for non-coverage-determination grievances would be futile.

## DISCUSSION

A. Background

Plaintiffs are senior citizens who wished to enroll in the new Medicare Part D prescription drug benefit program created by the MMA. (Dkt. #1-1 at 2). The Drug Benefit is administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency. (Dkt. #9-1 at 4).

Plaintiffs allege that they chose defendant Humana's prescription drug plan ("PDP") from

among many PDP options. (Dkt. #1-1 at 7). In choosing defendants' plan, plaintiffs relied on defendants' advertising materials. (Dkt. #1-1 at 8). Plaintiffs then completed the Humana PDP enrollment form. (Dkt. #1-1 at 7). Defendants represented to plaintiffs that they would receive the Drug Benefit beginning on January 1, 2006. (Dkt. #1-1 at 7). Defendants began charging plaintiffs a monthly premium in January, 2006. (Dkt. #1-1 at 4). Defendants' PDP required that enrollees use a mail-order form to obtain their prescription drugs. (Dkt. #1-1 at 9). Between mid-December and early February 2006, plaintiffs made numerous requests for Drug Benefit order forms and instructions, but defendants failed to provide them to plaintiffs. (Dkt. #1-1 at 9-10). Plaintiffs were forced to purchase their prescription drugs out-of-pocket at retail prices. (Dkt. #1-1 at 10).

Plaintiffs commenced this action on February 2, 2006. (Dkt. #1-1 at 1). They claim breach of contract, violation of state consumer protection statutes, unjust enrichment, fraud, and fraud in the inducement. (Dkt. #1-1 at 14-17). Plaintiffs purport to bring this action as a class action under F.R.C.P. 23. (Dkt. #1-1 at 11-13).

Defendants have moved to dismiss for failure to state a claim pursuant to F.R.C.P. 12(b)(6).

### B. Motion to Dismiss Standard

In the context of a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the Court must (1) construe the complaint in the light most favorable to plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether the plaintiff can prove any set of facts to support a claim that would merit relief. *See, Cahill v. Liberty Mutual Insurance Company*, 80 F. 3d 336, 337-38 (9th Cir. 1996).

### C. Preemption

Defendants argue that the MMA expressly preempts plaintiffs' state law claims. When interpreting an express preemption clause, the Court first focuses on the plain meaning of the statutory language, which provides the best evidence of congressional intent. *CSX Transp., Inc.*

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
PAGE - 3

*v. Easterwood*, 507 U.S. 658, 664 (1993).  The relevant statutory language is found in 42 U.S.C. § 1395w-26(b)(3) (2006), which provides:

> The standards established under this part shall supersede any state law or regulation (other than State licencing laws or State laws relating to plan solvency) with respect to [Medicare Part C managed care] plans which are offered by [Medicare managed care] organizations under this part.

The clause applies to Medicare Part D Drug Benefit providers pursuant to 42 U.S.C. § 1395w-112(g) (2006). The language of the MMA preemption clause is clear:  if Part D establishes standards that cover plaintiffs' claims, then those standards supersede state law, and plaintiffs' state law claims are preempted.[2]

Defendants argue that the regulations for "approval of marketing materials and enrollment forms" preempt plaintiffs' claims insofar as they relate to defendants' marketing materials.  *See* 42 C.F.R. § 423.50 (2005).  The regulations establish comprehensive standards for marketing materials, and they provide for a mandatory CMS approval process before those marketing materials can be used.  *Id.*  Included in the regulations are provisions prohibiting marketing materials that "could mislead or confuse Medicare beneficiaries, or misrepresent the Part D sponsor or its Part D plan."  § 423.50(f)(iv).  There are clearly standards established under Medicare Part D statute with respect to marketing materials, and those standards supersede state law pursuant to the express preemption language of Part D.  Thus, plaintiffs' consumer protection claims are preempted, and their fraud and fraud in the inducement claims are preempted to the extent that they rely on defendants' marketing materials.

Defendants further argue that plaintiffs seek a "coverage determination" and that their

---

[2] Plaintiffs argue that their claims do not "arise under" the Medicare Act and are therefore not preempted by federal standards pursuant to the rule in *Heckler v. Ringer*. However, the *Heckler* standard does not apply here.  In that case, the court interpreted a section of the Medicare Act which made judicial review possible only after the exhaustion of the procedure provided in 42 U.S.C. § 405(g)-(h). *Heckler*, 466 U.S. at 605.  The provision in question in *Heckler* actually contains the language "arise under," while the provision in question here has no such language. *Id.* at 615.  Additionally, the *Heckler* decision informs remedy exhaustion analysis, and not preemption analysis.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
PAGE - 4

claims are therefore governed exclusively by the coverage determinations process set out in 24 C.F.R. § 423.562 et seq. According to § 423.566, a coverage determinations is: 1) a decision not to provide or pay for a Part D drug; 2) failure to provide a coverage determination in a timely manner; 3) a decision concerning an exceptions requests under two different sections of the part; 4) a decision about the amount of cost sharing for a drug. 42 C.F.R. § 423.566(b) (2005).

Plaintiffs argue that they do not seek – or seek to appeal – a "coverage determination." They argue that they do not claim that defendants have made an incorrect decision about whether to pay for a certain drug, nor do they complain of any of the other conduct listed in the "coverage determination" definition. Instead, they claim that they were outside the system entirely because they did not have access to the order forms and instructions by which they could order prescription drugs. Defendants contend that plaintiffs' claim is, at bottom, one about failure to provide coverage. Plaintiffs' complaint alleges that defendants breached their contract when defendants "failed to provide prescription drug benefits as promised," and that defendants were unjustly enriched because defendants charged premiums but failed to provide drug benefits.

The Court agrees with defendants that plaintiffs' claims fall within the ambit of the coverage determination procedures and appeals process outlined in 24 C.F.R. § 423.562 et seq. Accordingly, the coverage determination regulations promulgated under Part D supersede plaintiffs' state contract and unjust enrichment claims, and their fraud claims to the extent that those stem from a failure to provide benefits as promised.

Even if plaintiffs were not seeking a coverage determination, their claims would nonetheless be preempted by other Part D standards. In addition to "coverage determination" appeals procedures, Part D also establishes grievance procedures. 42 C.F.R. § 423.564 (2005). The grievance procedures apply to any non-coverage-determination dispute between a PDP sponsor and its enrolless about any operations, activities, or behavior of the PDP sponsor. *See*

42 C.F.R. §§ 423.560, 423.564 (2005).  The regulations require that a PDP sponsor provide "meaningful procedures for timely hearing and resolving grievances," subject to certain standards outlined by CMS.  42 C.F.R. § 423.564(a), (e)-(g). These grievance procedures cover plaintiffs' complaint that defendants failed to provide drug order forms and instructions.  As a result, plaintiff's contract and unjust enrichment claims, and their fraud claims to the extent that they relate to promises to provide forms and instructions, are preempted by the federally established grievance procedures.

Plaintiffs argue that preemption by grievance procedures leads to the "absurd" result of making PDP sponsors the "sole and final judges of any claims brought against them."  However, grievances, even when adjudicated by insurance companies themselves, are not entirely inconsequential.  PDP sponsors must maintain records of all grievances and their dispositions, and they must report all grievances to CMS.  42 C.F.R. § 423.564(g); Medicare Part D Reporting Requirements, CMS, Jan. 25, 2006.  CMS then has the authority to impose "intermediate sanctions," including fines of up to $100,000, on PDP sponsors for violations including misrepresentation and failure to provide medically necessary items.  42 C.F.R. §§ 423.750, 423.752 (2005).

Plaintiffs also argue that CMS's commentary indicates that Congress did not intend to preempt state contract and tort remedies.  Specifically, plaintiffs cite CMS's opinion that Congress did not intend to preempt state claims for torts such as wrongful death. 70 Fed. Reg. 4362 (Jan. 28, 2005).  CMS goes on to say that Congress did not intend to preempt state contract law with respect to disputes between plans and their *subcontractors*. *Id.*  In short, CMS believes that "an enrollee will still have state remedies available in cases in which the legal issue before the court is independent of an issue related to the organization's status" as a PDP sponsor. *Id.*  Defendants point out, however, that this action is entirely derived from defendants' provision of a Part D drug benefit, and not from its other activities as a private insurer. (Dkt. #27 at 5).  Accordingly, the plaintiffs' claims are related to the organization's

status as a PDP sponsor, and Congress intended to preempt them.

Furthermore, the legislative history of the preemption provision makes it clear that Congress intended Part D preemption to be broad in scope. Prior to the MMA, state laws were preempted wherever they were "inconsistent" with federal standards, or when they related to one of four specified categories. 42 U.S.C. § 1395w-26(b)(3) (2002). The MMA, in contrast, provided that federal standards shall supersede all state laws and regulations with respect to PDP plans, except for standards relating to licensure and solvency. *See* 42 U.S.C. §§ 1395w-26(b)(3), 1395w-112(g) (2006). As CMS explains this change: "[t]he [old] presumption was that a state law was not preempted if it did not conflict with a [Medicare managed care] requirement and did not fall into one of the four categories where preemption was presumed . . . [T]he MMA reversed this presumption and provided that state laws are *presumed to be preempted* unless they relate to licensure or solvency." 70 Fed. Reg. 4319 (emphasis added).

Additionally, however harsh preemption may seem to particular claimants, it is consistent with the structure and purpose of the MMA. In discerning the precise scope of express preemption, the Court may look to the statutory framework and the structure and purposes of the statute as a whole. *Medtronic v. Lohr*, 518 U.S. 470, 484 (1996). The Medicare statutes and regulations create an exceedingly complex national program which requires administration by agencies with expertise in the area. As CMS has noted when discussing the preemption prevision with respect to the Medicare managed care program, "Congress intended that the . . . program, a Federal program, operate under Federal rules." 69 Fed. Reg. 49604 (Aug. 3, 2004). Furthermore, CMS expressed its opinion that Congress broadened the scope of preemption in order to facilitate the operation of regional PDP providers. *Id.* To this end, Congress recognized that "establishing a uniform set of grievance standards [would] reduce confusion and burden for enrollees and plans." 70 Fed. Reg. 4362 (Jan. 28, 2005). The structure and purpose of the Medicare statutes confirm Congress's intent to preempt most state law with federal standards.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
PAGE - 7

D.  Exhaustion of Remedies

Because this Court finds that plaintiffs' claims are preempted for the reasons stated above, the exhaustion of remedies questions raised by the parties are moot.

CONCLUSION

Accordingly, the Court hereby ORDERS that:

Defendant's motion to dismiss (Dkt.# 9-1) is GRANTED in its entirety, and plaintiff's claims are DISMISSED for failure to state a claim on which relief may be granted.

DATED this __5__ day of June, 2006.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE